UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DANIEL GATSON,**<br><br>        Petitioner,<br><br>  v.<br><br>**UNITED STATES OF AMERICA,**<br><br>        Respondent. | Case No.: 20-cv-13817<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court on petitioner Daniel Gatson's ("Petitioner") motion (the "Motion") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 due to ineffective assistance of counsel. ECF No. 1. For the reasons set forth below, Petitioner's Motion is **DENIED**.

**I.    BACKGROUND**[1]

Between November 2012 and October 2013, Petitioner and several of his associates planned and participated in twenty-seven (27) actual or attempted burglaries of homes in wealthy neighborhoods in New York, New Jersey, Pennsylvania, Virginia, North Carolina, and Georgia. Petitioner was a central figure in the operation. He researched and chose the target locations for the burglaries, he chose specific people to work with, he devised the strategies used to burglarize each of the homes, and he personally sold stolen property and distributed the proceeds to other members of his crew.

Petitioner was arrested on October 11, 2013 and, pursuant to a Second Superseding Indictment issued on March 26, 2015, charged with one count of conspiracy to transport stolen property in interstate commerce (Count 1), and twelve counts of interstate transportation of stolen property (Counts 2-13). Second Superseding Indictment, *United States v. Gatson*, 13-cr-00705 (Mar. 26, 2015), Dkt. No. 100.

At trial, the Government presented a variety of evidence about the crimes charged and Petitioner's role therein, including witness testimony from: (1) victim-homeowners whose homes were burglarized; (2) four cooperating co-conspirators involved in the burglaries; (3) lay witnesses; (4) law enforcement officers; and (5) an expert witness on cell-site location information ("CSLI") from various cell phones used by Petitioner and his co-conspirators. The jury heard testimony describing how Petitioner planned and carried out each of the burglaries. Petitioner would identify the target homes located in wealthy

---

[1] This section is intended to provide a brief summary of the facts of the case. Citations to the record for specific facts and evidence are included where appropriate.

residential neighborhoods through online searches of real estate websites and forward the addresses to co-conspirators. Petitioner would also rent minivans to avoid drawing any attention in residential areas and removed their back seats to hide members of the crew and to ensure enough available space to hold any stolen safes or other possessions after a burglary was complete. Petitioner instructed his co-conspirators to exercise in order to have the strength needed to carry large valuable objects and safes from burglarized homes, and he encouraged members of his crew to wear gloves and mask to avoid identification. Petitioner assigned roles to each member of the crew on a given night, including a designated driver and at least two people who would enter the homes and commit the actual burglaries, one of which was always Petitioner. Although the teams that committed burglaries on a given night changed, there were a number of repeat participants, including Curtis Dent Jr. ("C. Dent"), Emana Dent ("E. Dent"), and Mark Gonzalez ("Gonzalez"). Once a burglary was completed, Petitioner would take possession of the stolen property and, one or two days later, sell that stolen property in New York City's "Diamond District" for cash. Petitioner would then decide how to split the proceeds between the members of the crew that worked on that burglary.

On November 2, 2015, a jury found Petitioner guilty of conspiracy to transport stolen property in interstate commerce (Count 1), and eleven counts of interstate transportation of stolen property (Counts 2-5, 7-13).[2] Jury Verdict, *United States v. Gatson*, 13-cr-00705 (Nov. 2, 2015), Dkt. No. 133. On June 30, 2016, the Court sentenced Petitioner to an aggregate term of imprisonment of 300 months. Judgment, *United States v. Gatson*, 13-cr-00705 (June 30, 2016), Dkt. No. 159.

## II.     LEGAL STANDARD

### A.     Section 2255 Motions

Pursuant to 28 U.S.C. § 2255, the Court may vacate, correct, or set aside a sentence if, among other things, it was "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Section 2255 provides a legal means for a criminal defendant to collaterally attack their sentence. *United States v. Cannistraro*, 734 F. Supp. 1110, 1119 (D.N.J. 1990). It is not a substitute for direct appeal and may not be used to "relitigate questions which were raised and considered on direct appeal" or could have been raised and considered on direct appeal. *Johnson v. United States*, No. 2:12-CV-2510 (DMC), 2013 WL 1952384, at *1 (D.N.J. May 9, 2013) (quoting *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993)). Nonetheless, it is well settled that a convicted criminal defendant may properly bring a § 2255 claim premised on an ineffective assistance of counsel which may itself be supported by substantive arguments that would be procedurally defaulted or otherwise outside the purview of § 2255. *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014).

---

[2] Petitioner was acquitted on one count of interstate transportation of stolen property (Count 6) by the jury.

A criminal defendant bears the burden of establishing an entitlement to relief under § 2255. *United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Because § 2255 motions are collateral attacks on a sentence, however, a criminal defendant bringing such a motion "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Accordingly, relief under § 2255 is available only when "the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and . . . present[s] exceptional circumstances." *Travillion*, 759 F.3d at 288 (quotations omitted) (alterations in original). In considering the merits of a motion to vacate a defendant's sentence pursuant to § 2255, the Court "must accept the truth of the movant's factual allegations unless they are clearly frivolous based on the existing record." *United States v. Book*, 432 F.3d 542, 545 (3d Cir. 2005) (quotations omitted).

### B. Ineffective Assistance of Counsel Claims

The Sixth Amendment's guarantee that criminal defendants shall have the right to "the assistance of counsel for [their] defense", U.S. Const. amend. VI, includes within it "the right to the effective assistance of counsel." *Garza v. Idaho*, 139 S. Ct. 738, 733-34 (2019). In order to prevail on a claim that their Sixth Amendment right to effective assistance of counsel was violated, a criminal defendant must show (1) "that counsel's representation fell below an objective standard of reasonableness"; and (2) "that any such deficiency was 'prejudicial to the defense.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88, 692 (1984)). In other words, to prevail on a "*Strickland*" claim for ineffective assistance of counsel, a criminal defendant must show *both* deficiency in performance, *and* prejudice as a result of such deficiency. *Travillion*, 759 F.3d at 289.

Under the first prong of the *Strickland* analysis, the Court's review of counsel's performance is highly deferential. Counsel's performance will only be found deficient where "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Importantly, "[t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). To that end, there is "a strong presumption that counsel's challenged conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Moreover, in scrutinizing counsel's performance, the Court must make "every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 688. Thus, to satisfy the deficiency prong of *Strickland*, "[i]n essence, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness' meaning 'reasonableness under prevailing professional norms.'" *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996) (quoting *Strickland*, 466 U.S. at 688).

Under the second *Strickland* prong, a criminal defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. In other words, to establish prejudice under

3

*Strickland*, a criminal defendant must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability," in turn, is one that is "sufficient to undermine confidence in the outcome" viewed in light of the totality of the circumstances. *Id.* at 696. It is not sufficient for a criminal defendant to show that some error or errors "had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

The Court need not address the prongs of the *Strickland* analysis in any particular order and may evaluate the existence of prejudice first "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Id.* at 697. If Petitioner has satisfied both elements of the *Strickland* test, he will be entitled to relief under § 2255. *Travillion*, 759 F.3d at 289.

### III.   DISCUSSION

Petitioner asserts six separate claims for relief under § 2255, all of which are premised on alleged ineffective assistance of counsel. Petitioner's claims generally fall into several categories. First, Petitioner claims that trial counsel unreasonably failed to challenge his conviction and sentence on Count 1 of the Second Superseding Indictment for conspiracy to transport stolen property in interstate commerce on a variety of grounds. Second, Petitioner claims that trial counsel unreasonably failed to challenge the sufficiency of the evidence sustaining his conviction and sentence on several of the substantive counts for the interstate transportation of stolen property. Third, Petitioner argues that trial counsel unreasonably failed to argue that the jury should have been given a cautionary instruction regarding the evidence of uncharged burglaries. Finally, Petitioner argues that sentencing counsel was deficient by failing to present sufficient mitigating evidence at sentencing. The Court addresses each of these arguments in turn.[3]

#### A.   Need for an Evidentiary Hearing

Pursuant to 28 U.S.C. § 2255(b), the Court is required to hold an evidentiary hearing on a § 2255 motion unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. 28 U.S.C. § 2255(b). Here, the Court has considered Petitioner's Motion and finds that the extensive record in his criminal case conclusively demonstrates that he is not entitled to relief. Accordingly, an evidentiary hearing is not necessary.

#### B.   Petitioner's Claims Concerning Count 1 – Conspiracy to Transport Stolen Property in Interstate Commerce

Petitioner raises several challenges to trial counsel's performance as it relates to Count 1 of the Second Superseding Indictment for conspiracy to transport stolen property in interstate commerce. First, Petitioner claims that counsel was deficient in failing to seek

---

[3] At sentencing and on appeal, Petitioner was represented by K. Anthony Thomas, an assistant federal public defender. Mr. Thomas is referred to as "sentencing counsel" to differentiate him from Petitioner's trial counsel.

4

acquittal under Rule 29 of the Federal Rules of Criminal Procedure due to insufficient evidence. Second, Petitioner claims that trial counsel was deficient in failing to challenge the Government's presentation of evidence as an impermissible variance from the conduct charged in the Second Superseding Indictment. Finally, Petitioner argues that trial counsel was deficient in failing to request a jury instruction in support of a "multiple conspiracy defense." At bottom, each of these challenges turns on the question of whether there was sufficient evidence at trial to support Petitioner's conviction on a single, overarching conspiracy or whether the evidence instead merely established multiple, smaller conspiracies for which Petitioner was not charged. The record demonstrates that there was more than sufficient evidence to sustain Petitioner's conviction on the single conspiracy charge, and, as explained in more detail below, the Court finds that each of Petitioner's claims for ineffective assistance of counsel with respect thereto is without merit.

### 1. Counsel's Failure to File a Rule 29 Motion

Petitioner makes two separate arguments with respect to the sufficiency of the evidence on the conspiracy charge. First, Petitioner argues that there was insufficient evidence that the conspirators agreed to, intended or had any role in Petitioner's transportation of stolen property across state lines for the purpose of fencing the stolen items and converting them to cash. Second, Petitioner argues that the evidence established multiple conspiracies concerning each separate burglary and subsequent interstate transportation of stolen property rather than one overarching conspiracy tying the burglaries together as alleged in the Second Superseding Indictment. The Court disagrees.

Rule 29 of the Federal Rules of Criminal Procedure provides, in relevant part, that upon a defendant's motion, the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In deciding a motion for judgment of acquittal under Rule 29, the Court must "review the evidence in the light most favorable to the government and sustain the verdict 'if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Mike*, 655 F.3d 167, 174 (3d Cir. 2011) (quoting *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998)). Where a criminal defendant challenges the sufficiency of the evidence presented at trial, "the Court must affirm if a rational trier of fact could have found the defendant guilty beyond a reasonable doubt and if the verdict is supported by substantial evidence." *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006). This threshold may be satisfied entirely by circumstantial evidence. *Id.* Importantly, in the context of an ineffective assistance of counsel claim, counsel's failure to bring what would have been a frivolous, futile, or unsuccessful Rule 29 motion will fail both prongs of the *Strickland* analysis and will thus not warrant relief under § 2255. *See Gov't of Virgin Islands v. Joseph*, 465 F. App'x 138, 142 (3d Cir. 2012); *see also Soto v. United States*, No. Civ. A. 04-2108 (JAG), 2005 WL 3078177, at *11 (D.N.J. Nov. 16, 2005).

5

### a. Evidence of an Agreement to Transport Stolen Property in Interstate Commerce

With respect to Petitioner's first argument – that there was no evidence of an agreement between the conspirators to transport stolen property across state lines and that Petitioner did so on his own accord – the Court finds that there was sufficient evidence in the record such that a reasonable trier of fact could find Petitioner guilty on Count 1. To convict Petitioner of conspiracy in violation of 18 U.S.C. § 371, the jury was required to find: "(1) two or more persons agreed to commit offenses against the United States; (2) [Petitioner] was a party to or member of that agreement; (3) [Petitioner] and at least one other alleged conspirator shared a unity of purpose and the intent to achieve a common goal or objective to commit an offense against the United States; and (4) at some time during the existence of the agreement or conspiracy, at least one of the members performed an overt act in order to further the objectives of the agreement." *United States v. Dressel*, 625 F. App'x 583, 590 (3d Cir. 2015). In proving the existence of an agreement, the Government was not required to present direct evidence of a formal, written agreement but could instead rely entirely on circumstantial evidence from which a jury could reasonably infer the existence of an agreement. *United States v. Tyson*, 653 F.3d 192, 208 (3d Cir. 2011).

Here, for the burglaries during which Petitioner and his co-conspirators actively drove across state lines in order to burglarize a home, it is clear that there was sufficient evidence of an agreement to transport stolen property in interstate commerce. For example, Petitioner's co-conspirators testified that, at Petitioner's suggestion, they burglarized a home in Virginia and transported the stolen property back to New Jersey because of a perceived slower response time from law enforcement. *See* Trial Tr. 13:8 - 17:6, 187:6 – 189:14, ECF No. 143. For a number of more local burglaries, there was similar testimony that Petitioner and his co-conspirators would burglarize a target house and cross state lines into New York or New Jersey in the process of transporting the stolen property after the burglary was completed. *See, e.g.*, Trial Tr. 193:12-200:14, ECF No. 142; *see also* Trial Tr. 36:10-40:16, ECF No. 143.

Even for burglaries in which there was no evidence that Petitioner or his co-conspirators crossed state lines in carrying out the offense, there was also substantial evidence supporting the conspiracy charge. For example, several of Petitioner's co-conspirators testified that Petitioner would hold onto the jewelry following a successful burglary until he could bring it to the fence to sell it for cash. *See* Trial Tr. 155:24 - 157:8 ECF 142; 180:4-9, ECF No. 143; 213:16 – 214:4. Petitioner's co-conspirators also testified that they would be paid by Petitioner one or two days after a burglary once Petitioner had an opportunity to sell the stolen property in New York City. *See, e.g.*, Trial Tr. 125:19 – 126:1. 155:24 – 157:8, ECF No. 142; 6:13-18, ECF No. 143. Indeed, two of Petitioner's co-conspirators testified that on one occasion they each went with Petitioner to New York City's Diamond District where he sold stolen property for cash that was then distributed among the participants in the burglary. Trial Tr. 156:20 – 157:3, ECF No. 142; 58:17-20, 68:3 – 69:13, 70:6 – 71:25, 180:4 – 181:2, ECF No. 143. Beyond that, Ayman Bishay and

Roni Rubinov, who operated jewelry businesses in New York City's Diamond District, testified that they personally purchased jewelry directly from Petitioner on dates that coincided with successful burglaries. Trial Tr. 77:5 – 107:9, 143:16 – 154:11, ECF 144. Finally, there was extensive evidence from the Government's expert analyzing Petitioner's CSLI which could place Petitioner in the area where a burglary took place and then in New York City's Diamond District within one or two days after that burglary, from which the jury could reasonably infer Petitioner was selling jewelry stolen during such burglary. In other words, there was evidence that Petitioner's co-conspirators knew of and agreed to not just the burglary component of the scheme, but also the interstate transportation of property stolen during the commission of those burglaries or in an effort to convert the proceeds thereof to cash.

Thus, in total, this evidence, viewed in the light most favorable to the Government, was sufficient such that a rational trier of fact could find multiple people, including Petitioner, knowingly and intentionally agreed to transport stolen property across state lines in order to obtain money from burglarizing homes and acted in furtherance of that objective through either the direct interstate transportation of stolen property immediately upon completion of a burglary, the transportation of stolen property one or two days after a burglary from Petitioner's home in New Jersey to New York City where it would be sold for cash, or both.

### b. Evidence of a Single Conspiracy

Petitioner's second argument – that the evidence at trial was insufficient to establish a single, overarching conspiracy as charged in the Second Superseding Indictment – fares no better. In determining whether evidence offered at trial established a single conspiracy or multiple conspiracies, the Court must consider (1) "whether there was a common goal among the conspirators"; (2) "the nature of the scheme to determine whether the agreement contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators"; and (3) "the extent to which the participants overlap in the various dealings." *United States v. Kelly*, 892 F.2d 255, 259 (3d Cir. 1989). "The absence of one of these factors 'does not necessarily defeat an inference of the existence of a single conspiracy.'" *United States v. Greenidge*, 495 F.3d 85, 93 (3d Cir. 2007) (quoting *United States v. Padilla*, 982 F.2d 110, 115 (3d Cir. 1992)). Rather, the Court should evaluate the interdependence among the co-conspirators in order to determine whether the co-conspirators were "all committed to the same set of objectives in a single conspiracy." *United states v. Smith*, 82 F.3d 1261, 1271 (3d Cir. 1996); *United States v. Kemp*, 500 F.3d 257, 289 (3d Cir. 2007). Where "the activities are interdependent or mutually supportive to any degree, the inference becomes compelling that the participants are involved in but one conspiracy." *Smith*, 82 F.3d at 1269. Importantly, "a finding of a master conspiracy with sub-schemes does not constitute a finding of multiple, unrelated conspiracies." *Id.*; *see also United States v. Hornick*, 491 F. App'x 277, 287 (3d Cir. 2012).

Here, there was sufficient evidence for the jury to find Petitioner guilty of a single, overarching conspiracy. First, there was substantial evidence that Petitioner and his co-

conspirators shared a common goal. In making this determination, the Court looks to "the underlying purpose of the alleged criminal activity." *United States v. Rigas*, 605 F.3d 194, 214 (3d Cir. 2010). Here, the purpose of the criminal activity was to obtain money through burglarizing homes and converting property stolen in such burglaries to cash through fences in New York City. That purpose was consistent across each of the burglaries and shared by the participating conspirators. Several of Petitioner's co-conspirators testified that they knew about the burglaries, joined the conspiracy under the allure of making significant sums of money from those burglaries, and that they knew, either from personal experience and observation or from Petitioner's own statements to them, that they would get paid shortly after each burglary once Petitioner had a chance to sell stolen jewelry to fences in New York City. *See, e.g.*, Trial Tr. 138:17 – 139:16, 156:20 – 157:8, ECF No. 142; 174:16 – 175:13, 177:23 – 181:2, ECF No. 143; 210:14 – 213:22, ECF No. 144.

Second, there was substantial evidence from which the jury could reasonably find that Petitioner and his co-conspirators contemplated a continuous result that would not have continued absent their continued cooperation. The evidence showed that Petitioner and his co-conspirators had a clear *modus operandi* in which they targeted homes in wealthy residential neighborhoods, rented minivans to avoid arousing suspicion in target neighborhoods and ensure space to transport large items stolen during the burglaries, purchased and used "burner phones" to communicate during each burglary, wore specific articles of clothing to conceal their identities, and, within one or two days of a burglary, would sell the stolen items in New York City for cash. *See, e.g.*, Trial Tr. 147:2 – 148:1, ECF No. 142; 177:23 – 181:2, ECF No. 143. The jury also heard evidence that, with respect to each burglary and subsequent transportation of stolen property, Petitioner and his co-conspirators each had a specific role to play, either as a driver, a lookout, or as part of the "entry team" that searched homes for valuable property to steal. *See, e.g.*, Trial Tr. 144:16-25, ECF No. 142, 175:20 – 176:6. The various co-conspirators worked directly with each other in carrying out the conspiracy and were aware of activities undertaken in furtherance of the conspiracy even if they were not personally involved in those specific activities. Moreover, there was overwhelming evidence which showed that Petitioner was the mastermind behind the conspiracy and that he was the one responsible for choosing target homes, selecting participants and assigning roles among them, devising the standard plan utilized for each burglary, selling the stolen property, and distributing the cash proceeds among the participants. Even if the Court were to view each burglary and interstate transportation of stolen property as its own "sub-scheme," it does not change the unifying, overarching objective that the conspirators, led by Petitioner, pursued and carried out in the same manner and utilizing the same methods over the course of 11 months from November 2012 through October 2013. *Hornick*, 491 F. App'x at 288.

Finally, there was significant overlap in the participants. Not only was Petitioner involved in every single burglary or subsequent interstate transportation of stolen property, there was a small overlapping core of common participants that were involved in the activities which furthered the objectives of the conspiracy. For example, C. Dent routinely served as a driver during burglaries, while Petitioner, and either Hanks or, for the five

8

burglaries he participated in, Gonzalez, would serve as the entry team. Trial Tr. 145:16 – 147:1, ECF No. 142; 195:14 – 198:3, ECF No. 144. On occasions where E. Dent participated in the burglaries, she served as the driver while C. Dent became part of the entry team. *Id.* Although the roles and participants rotated from time to time, the participants were almost all aware of each other's identities and their roles in the conspiracy. It also makes no difference that certain members of the conspiracy, including E. Dent and Gonzalez, joined after the conspiracy had started, and others, such as Jerry Montgomery left, throughout its existence. "Such behavior is common" and is precisely why "the government 'may establish the existence of a continuing core conspiracy which attracts different members at different times and which involves different sub-groups committing acts in furtherance of the overall plan.'" *United States v. Jarmon*, 14 F.4th 268, 273-74 (3d Cir. 2021). Indeed, the addition of new members into the conspiracy did not change the overall objective thereof but, rather, furthered it and allowed Petitioner to "slo[t] his new collaborators into a well-oiled scheme." *Hornick*, 491 F. App'x at 289.

\* \* \*

In short, there was substantial evidence at trial that a relatively small set of substantially overlapping participants, with Petitioner at the center, planned and coordinated various burglaries in order to steal valuable property and transport it to a fence in New York City where it could be sold for cash to be distributed among the participants. Accordingly, counsel was not objectively unreasonable in deciding against making a Rule 29 motion for judgment of acquittal, and that decision did not result in any prejudice against Petitioner or his defense. Accordingly, this basis for relief under § 2255 is denied.

### 2. Counsel's Failure to Challenge Evidence Presented at Trial as a Variance of the Conspiracy Charge in the Second Superseding Indictment

Petitioner next argues that the evidence presented at trial by the Government impermissibly varied from the conduct charged in the Second Superseding Indictment with respect to Count One. Specifically, Petitioner argues that, although the Second Superseding Indictment charged a single, overarching conspiracy, the evidence at trial proved, at best, multiple conspiracies correlating to each individual burglary.[4] The Court disagrees.

An impermissible variance occurs where the Government improperly "allege[s] a single conspiracy in an indictment and then offer[s] evidence of multiple, independently

---

[4] Petitioner also appears to suggest that the Government's evidence proved a conspiracy or conspiracies to burglarize homes, but not to transport stolen property in interstate commerce. This argument is unpersuasive. The Court has already rejected Petitioner's claim that the transportation of stolen property in interstate commerce was independent of and unrelated to the burglaries. It is unsurprising that the evidence produced at trial in support of the conspiracy charge in Count 1 included detailed evidence regarding the underlying burglaries. Such evidence was necessary to show that the conspirators knew that the property they transported was stolen and that it was being transported in interstate commerce.

9

operating conspiracies at trial." *United States v. Vega*, 184 F. App'x 236, 244 (3d Cir. 2006). A conviction must be vacated where a criminal defendant shows both (1) that there was a variance between the conduct charged in the indictment and the evidence offered at trial; and (2) that the variance prejudiced one of his substantial rights. *Hornick*, 491 F. App'x at 287. Petitioner has failed to satisfy either element of this test.

First, as the Court has previously explained, the evidence offered by the Government at trial was sufficient to sustain a conviction for a single, overarching conspiracy. In other words, the Court has already determined that "there was sufficient evidence from which the jury could have concluded that the [G]overnment proved the single conspiracy alleged in the [Second Superseding Indictment]." *United States v. Lee*, 359 F.3d 194, 207 (3d Cir. 2004).

Second, even if there were a variance between the conduct charged in the Second Superseding Indictment and the evidence presented at trial, Petitioner has not demonstrated any prejudice to his substantial rights caused thereby. The prohibition on variances serves at least three important purposes. *Kemp*, 500 F.3d at 291. First, and "most fundamentally, the rule protects the right of each defendant 'not to be tried *en masse* for the conglomeration of distinct and separate offenses committed by others.'" *United States v. Schurr*, 775 F.2d 549, 553-54 (3d Cir. 1985) (quoting *Kotteakos v. United States*, 328 U.S. 750, 775 (1946)). Put differently, the rule against variances protects against the possibility that the jury may have been "unable to separate offenders and offenses and easily could have transferred guilt from one alleged co-schemer to another." *Perez*, 280 F.3d at 346 (quotations omitted). "Second, the rule ensures that a defendant has adequate notice of the charges being brought against him." *Kemp*, 500 F.3d at 291. Finally, the rule protects against the possibility of double jeopardy and "helps to minimize the danger that the defendant may be prosecuted a second time for the same offense." *Schurr*, 775 F.2d at 554.

None of these interests are implicated in this case. At the outset, there is no question that, regardless of whether characterized as a single conspiracy or multiple conspiracies, the charges brought against Petitioner in the Second Superseding Indictment provided adequate notice of the challenged conduct and Petitioner's central role therein. *See Kemp*, 500 F.3d at 291. Similarly, there is no reason to believe that a broader charge for a single, overarching conspiracy would threaten Petitioner with the possibility of future prosecutions for the same offense.

Nor is there any risk of guilt transference or evidence spillover. Even if the evidence at trial proved, first, that there were multiple conspiracies related to each burglary and subsequent interstate transportation of stolen property rather than a single conspiracy and, second, that the interstate transportation of stolen property was unrelated to the conspiracies to commit burglaries, the overwhelming evidence at trial established that Petitioner was the mastermind and at the center of each of these activities. There was substantial evidence that Petitioner was involved in every burglary, that he took possession of the property stolen in each burglary, and that he was responsible for taking that stolen property to a fence in New York City to sell it for cash. Thus, "[t]here was no chance that

10

the jury would impute the guilt of an unaffiliated conspirator to [Petitioner] or unfairly convict him of a conspiracy in which he was not involved." *Vega*, 184 F. App'x at 244.

Because there was sufficient evidence to support a single conspiracy charge, and because any variance therefrom based on the evidence presented at trial would have not prejudiced Petitioner in any meaningful way, counsel was not deficient for failing to raise this argument during the trial or on appeal. For these same reasons, Petitioner cannot demonstrate any prejudice as a result of counsel's failure to challenge his conviction based on a variance. Accordingly, this basis for relief under § 2255 is denied.

### 3. Failure to Request a Jury Instruction on Multiple Conspiracy Defense

In an argument closely related to the ones already rejected by the Court, Petitioner argues that counsel was ineffective for failing to argue in favor of a multiple conspiracy defense and for failing to request a corresponding jury instruction with respect thereto. Once again, the Court disagrees.

The Court has already discussed at length, and rejected, Petitioner's argument that the evidence presented at trial failed to establish a single, overarching conspiracy and, as a matter of law, proved only the existence of multiple conspiracies. Accordingly, counsel was not deficient for failing to raise this argument during Petitioner's trial.

Nor was counsel deficient for choosing not to request a jury instruction on the multiple conspiracy defense. "[A]s a general matter, 'the issue of whether a single conspiracy or multiple conspiracies exist is a fact question to be decided by a jury.'" *Hornick*, 491 F. App'x at 289 (quoting *Perez*, 280 F.3d at 346)). However, "a district court can properly refuse a defendant's request for a jury instruction on single versus multiple conspiracies if there is insufficient evidence to support such an instruction." *Greenidge*, 495 F.3d at 93. Even where a multiple conspiracies charge should have been given, reversal of a conviction on that basis is not automatic and will only be justified where a criminal defendant "demonstrate[s] both the likelihood of multiple conspiracies having existed, and substantial prejudice resulting from the failure to give the requested charge." *United States v. Barr*, 963 F.2d 641, 650 (3d Cir. 1992).

Petitioner fails to satisfy any of the criteria that would warrant either the initial multiple conspiracies instruction, vacatur of his conviction for the failure to provide that instruction to the jury, or vacatur of his conviction due to counsel's failure to request such an instruction. The evidence against Petitioner simply "did not demonstrate the existence of 'separate independent networks,' but rather, as the [Second Superseding Indictment] charged, a single conspiracy. *Greenidge*, 495 F.3d at 93. In the absence of any such evidence, counsel did not act unreasonably in choosing not to request an "unnecessary and potentially complex" jury instruction that would likely do no more than confuse the jury. *Hornick*, 491 F. App'x at 289. Moreover, Petitioner did not suffer any prejudice as a result of counsel's decision not to request a multiple conspiracy instruction. As the Court has already stated, Petitioner was fully aware of the nature of the charges against him and there

11

was no risk of Petitioner being found guilty based on evidence of conduct in which he was not otherwise directly involved regardless of whether the case was presented as a single conspiracy or as multiple conspiracies.

Accordingly, counsel was not ineffective for failing to argue in support of a multiple conspiracy defense or for failing to request a jury instruction in support thereof, and relief under § 2255 on that basis is denied.

### C. Sufficiency of the Evidence With Respect to the Substantive Counts of Transportation of Stolen Property in Interstate Commerce

Petitioner next argues that counsel was ineffective for challenging the sufficiency of the evidence on several of the substantive counts for the transportation of stolen property in interstate commerce. Specifically, Petitioner argues that there was insufficient evidence to support a guilty verdict on Counts 2, 3, 8, and 11 of the Second Superseding Indictment because the only evidence offered in support of these charges was circumstantial CSLI placing Petitioner in New York City's Diamond District on days following certain burglaries. The Court disagrees.

Contrary to Petitioner's claims, his trial counsel did specifically move for a judgment of acquittal under Rule 29 with respect to Counts 2 and 3. *See* Trial Tr. 173:10 – 177:2, ECF No. 137. Moreover, counsel for Petitioner's co-defendant Anthony Hanks, specifically moved for a judgment of acquittal under Rule 29 with respect to several of the counts, including Count 11. Trial Tr. 177:14 – 19, ECF No. 137. The Court considered both of these motions, concluded, as to all of the counts discussed, that "for purposes of a Rule 29 motion, the Government ha[d] met its burden," and denied both motions. Trial Tr. 184:23-25, ECF No. 137. Because Rule 29 motions were made by counsel and ruled on by the Court during Petitioner's trial, the Court will not now relitigate these same issues. *DeRewal*, 10 F.3d at 105 n.4.

Even if the Court were to reevaluate the sufficiency of the evidence on Counts 2, 3, 8, and 11, Petitioner would still not be entitled to any relief. Petitioner's claim that the only evidence in support of these counts was circumstantial CSLI data is simply incorrect. As the Court has previously noted, in deciding a Rule 29 motion, the Court must "review the evidence in the light most favorable to the government and sustain the verdict 'if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Mike*, 655 F.3d at 174 (quoting *Dent*, 149 F.3d at 187). In order to find Petitioner guilty on the substantive counts for the interstate transportation of stolen property, the jury was required to find (1) that the goods, wares, merchandise and money were stolen or converted; (2) that Petitioner transported, transmitted, or transferred, or willfully caused to be transported the goods, wares and money in interstate commerce; (3) that, at the time Petitioner transported or caused to be transported the goods and money, he knew the property had been stolen or converted; and (4) that the stolen property had a value of at least $5,000. *See* Trial Tr. 36:13-24, ECF No. 180. The Government's burden was easily met with respect to Counts 2, 3, 8, and 11 and counsel was not ineffective in deciding to make a Rule 29 motion and how best to argue in support thereof.

Count 2 charged Petitioner with the interstate transportation of stolen property in connection with a December 1, 2012 burglary in Warren Township, New Jersey. *See* Second Superseding Indictment, at 12. In support of Count 2, there was evidence from the homeowner that the value of property stolen from his home exceeded one million dollars. Trial Tr. 39:5-18, ECF No. 140. Petitioner's co-conspirators testified as to Petitioner's participation in that burglary, and that they did not get paid for their own role therein until one or two days later. Trial Tr. 170:21 – 180:21, ECF No. 142. Finally, the Government's CSLI expert, Special Agent Scott Eicher, testified that on December 1, 2012, Petitioner's phone was near the residence burglarized in Warren Township that night, and, on December 3, 2012, Petitioner's phone moved from his residence in New Jersey to New York City's Diamond District. Trial Tr. 101:20 – 104:7, ECF No. 139.

Count 3 charged Petitioner with the interstate transportation of stolen property in connection with a December 5, 2012 burglary of a home in Harrison, New York. *See* Second Superseding Indictment, at 13. In support of Count 3, there was, again, testimony from the victim homeowner that the value of the property stolen exceeded $150,000 and recounted some of the specific items that were stolen. Trial Tr. 51:6 – 52:3, ECF No. 140. Petitioner's co-conspirators again recalled burglarizing a house with Petitioner in Harrison, New York in December 2012 and returning to his home in New Jersey immediately following that burglary. *See e.g.*, Trial Tr. 184:15-20; 187:11-24, ECF No. 142. As with Count 2, Agent Eicher testified that CSLI data indicated that on the night of December 5, 2012 Petitioner and certain of his co-conspirators were near the residence that was burglarized, and that the following day, December 6, 2012, Petitioner moved from his residence in New Jersey to the Diamond District in New York City. Trial Tr. 108:1 – 15, ECF No. 139.

Count 8 charged Petitioner with the interstate transportation of stolen property in connection with a February 5, 2013 burglary of a home in Colts Neck Township, New Jersey. Again, one of the victims of that burglary testified that the value of the property stolen was about $14,000. Trial Tr. 73:17 – 74:6, ECF No. 141. Petitioner's co-conspirators again testified about the circumstances of this burglary, including how one of the participants left their cell phone behind in the house. *See, e.g.*, Trial Tr. 29:21 – 36:9, 189:16 – 191:12, ECF No. 143. Agent Eicher also testified that CSLI data indicated that Petitioner's phone was near Colts Neck Township on the evening of February 5, 2013, and on February 6, 2013, Petitioner's phone moved from his residence in New Jersey to New York City's Diamond District. Trial Tr. 132:1 – 135:17, ECF No. 139.

Finally, Count 11 charged Petitioner with the interstate transportation of stolen property in connection with a September 20, 2013 burglary of a home in Old Brookville, New York. *See* Second Superseding Indictment, at 21. The victim homeowner testified that the value of the stolen property exceeded $60,000, including a diamond engagement ring. Trial Tr. 38:4-10, ECF No. 139. Petitioner's co-conspirators again testified about the circumstances of that burglary, and also testified about bringing the jewelry stolen during the burglary to New York City's Diamond District to have it appraised and sold the next day. Trial Tr. 65:10 – 72:17, ECF No. 143. Agent Eicher testified that on the night of

13

September 20, 2013, Petitioner's phone was located near the home in Old Brookville that was burglarized and subsequently moved back towards Petitioner's residence in New Jersey, and that on the morning of September 21, 2013, Petitioner's phone had moved back to New York City's Diamond District. Trial Tr. 173:5 – 180:21, ECF No. 139. Roni Rubinov, who operated a store in the Diamond District, testified that on September 21, 2013, he purchased the diamond ring stolen in the September 20, 2013 burglary from Petitioner. Trial Tr. 141:16 – 158:6, ECF No. 144.

In addition to the testimony and other evidence supporting these specific counts, the Court has already noted that there was substantial evidence that Petitioner participated in these, and other, burglaries, that Petitioner kept possession of the items stolen in those burglaries, and consistently traveled to the Diamond District to sell those stolen items for cash that was then distributed among the participants. Drawing all inferences in favor of the Government, there was therefore sufficient evidence from which the jury could find Petitioner guilty of each of these counts beyond a reasonable doubt. Accordingly, counsel was not ineffective for failing to make a Rule 29 motion with respect to Counts 2, 3, 8, and 11.

### D. Failure to Request a Cautionary Instruction

Petitioner argues that counsel was also ineffective for failing to request a cautionary jury instruction with respect to evidence of "other crimes" that was presented at trial. Specifically, Petitioner claims that because the jury was presented with evidence of twenty-seven (27) uncharged crimes of burglary, fifteen (15) of which were not connected to a substantive count of interstate transportation of stolen property in the Second Superseding Indictment, the jury was confused and unable to properly weigh this prejudicial evidence. The Court disagrees.

As an initial matter, the Court rejects Petitioner's argument that the uncharged crimes of burglary and attempted burglary should have been treated as Rule 404(b) "other crimes" evidence for which a limiting instruction was necessary. For Petitioner to be found guilty on the conspiracy charge, the Government was required to prove at least one overt act undertaken by a member of the conspiracy in furtherance thereof. *Dressel*, 625 F. App'x at 590. The Second Superseding Indictment clearly listed each of these burglaries as "overt acts" which were intended to advance the objectives of the conspiracy and which therefore helped directly establish a necessary element of the charged offense. As such, the evidence of uncharged burglaries and attempted burglaries is not simply evidence of "other crimes" but is instead intrinsic evidence which "directly prove[s] the charged conspiracy." *United States v. Cross*, 308 F.3d 308, 320 (3d Cir. 2002). Accordingly, Rule 404(b) did not apply to the admission of such evidence and a limiting instruction on that basis was not warranted. *See United States v. Gatson*, 744 F. App'x 97, 101 (3d Cir. 2018). Counsel was therefore not ineffective in failing to request such a cautionary instruction.

Petitioner's argument that a cautionary instruction was required under Rule 403, and counsel was ineffective for failing to request one, is similarly unpersuasive. Even assuming that counsel acted unreasonably in not requesting a cautionary instruction, Petitioner has

failed to demonstrate any prejudice he suffered as a result. It is unclear what sort of cautionary instruction Petitioner believes should have been sought and even more unclear how any such instruction could have affected the outcome of the jury's deliberations. As noted, the evidence of the burglaries and attempted burglaries was admissible as overt acts in furtherance of the conspiracy, and the jury was informed of the differences and overlaps between the evidence of overt acts supporting the conspiracy charge and the burglaries relating to the twelve substantive counts of interstate transportation of stolen property. The jury was instructed to consider each defendant and each offense separately, and there is no indication that the jury was either confused by or improperly relied on the evidence of uncharged burglaries or attempted burglaries in rendering their verdict on any of the substantive counts. Indeed, the jury's acquittal of Petitioner on Count 6 for the interstate transportation of stolen property suggests that they had no issue in analyzing each substantive count and the evidence in support thereof separately. Accordingly, counsel was not ineffective for failing to request a cautionary or limiting instruction with respect to the evidence of uncharged burglaries and attempted burglaries.

### E. Failure to Present Mitigating Evidence

Petitioner's final claim for relief under § 2255 arises out of the presentation of mitigating evidence at Petitioner's sentencing. Petitioner argues that sentencing counsel was ineffective by failing to cite specific studies regarding the relationship between age and recidivism that could have more forcefully made the case for a lesser sentence. This argument, however, is unavailing.

As Petitioner admits, counsel did argue against the application of sentencing enhancements sought by the Government and against the Government's loss calculation in the hope of securing a sentence between 120-150 months, rather than the 210-262 months under the applicable guidelines range, or the 360 months sought by the Government. Beyond arguing against these enhancements and calculations, however, sentencing counsel also argued in his sentencing brief and at Petitioner's sentencing hearing that the § 3553 factors, specifically the need for specific deterrence, did not support an additional upward variance beyond the guidelines range because of Petitioner's age and odds of recidivism.

The question is not whether sentencing counsel presented every available piece of evidence or advanced every conceivable argument. As the Court has noted, Petitioner was entitled to effective assistance of competent counsel, not perfect counsel. *See Yarborough*, 540 U.S. at 8. To that end, sentencing counsel's performance was sufficient to provide effective assistance, and Petitioner has suffered no prejudice as a result thereof. The precise issues raised by Petitioner in his present Motion were before the Court at his sentencing, and Petitioner has not demonstrated how the citation to specific studies about the relationship between age and recidivism would have affected the sentence ultimately imposed by the Court. Indeed, in deciding that an upward variance was, in fact, warranted, the Court specifically noted the risk of Petitioner's recidivism due to his lack of remorse, extensive criminal history, and his planning of the burglaries while he was incarcerated for unrelated offenses. The Court was thus informed of the relevant arguments and facts as

15

they applied to Petitioner's sentencing, took them into account, and sentenced Petitioner accordingly.

As such, Petitioner's claim of ineffective assistance of counsel for the failure to present sufficient mitigating evidence at sentencing is denied.

### F.  Certificate of Appealability

Pursuant to 28 U.S.C. § 2553(c), an appeal from a final order of the Court in a proceeding under § 2255 may not be taken unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2553(c). To satisfy this threshold, the petitioner "must demonstrate that reasonable jurists would find the [Court's] assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, Petitioner has not made the required showing. Petitioner has not raised any arguments or pointed to any evidence in the record from which a reasonable jurist could find that the Court's denial of his ineffective assistance of counsel claims were debatable or incorrect. Accordingly, no certificate of appealability shall issue.

### IV.  CONCLUSION

For all the reasons set forth above, Petitioner's Motion for relief under § 2255 is **DENIED**, and no certificate of appealability shall issue. An appropriate order follows.


*/s/ William J. Martini*
**Date: December 2, 2021**               **WILLIAM J. MARTINI, U.S.D.J.**